IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

   **Plaintiff**

        v.                          **CRIM. NO.** 08-0438 (JAG)

JIMMY CARRASQUILLO-RODRIGUEZ(1),
JESUS PABELLON-RODRIGUEZ (2),
RAMON GONZALEZ-DUARTE (4)

   **Defendants**

**OPINION AND ORDER**

Before the Court are three Motions for Judgment of Acquittal Pursuant to Rule 29 of the Federal Rules of Civil Procedure filed by Jimmy Carrasquillo Rodríguez, Jesús Pabellón Rodríguez and Ramón González Duarte. (Docket Nos. 280, 285, 287, respectively). For the reasons set forth below, the Court hereby **DENIES** the motions.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 23, 2009, all three defendants were indicted for conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One) and conspiracy to import into the United States from the Dominican Republic five kilograms or more of cocaine (Count Two). In addition, Carrasquillo Rodríguez and Pabellón Rodríguez were charged with possession of a firearm in furtherance of a drug trafficking

Criminal No. 08-438 (JAG)                                                2

crime involving a conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count Three) and possession of a firearm with an obliterated serial number (Count Four). Pabellón Rodríguez was also charged with possession of a firearm having been previously convicted of a crime punishable by a term of imprisonment exceeding one year (Count Five). (Third Superseding Indictment, Docket No. 136).

During the trial, it was established that on December 11, 2008, Task Force Officer Jesús Marrero ("TFO Marrero"), acting in an undercover capacity, met with González Duarte in the Dominican Republic. During the meeting, it was agreed that TFO Marrero would sell González Duarte 90 kilos of cocaine and ship them to Puerto Rico and that he would also transport an additional 60 kilos González Duarte was going to purchase from a third-party. During the meeting, González Duarte used a phone to call his step son Carrasquillo Rodríguez and introduce him to the agent. Juan Pagán Santiago[1], the purported owner of the drug business, also participated in the conversation for he was with Carrasquillo Rodríguez at the time.

It was also established during the trial that on December 16, 2008, when he was back in Puerto Rico, TFO Marrero again spoke on the phone with Juan Pagán Santiago and Carrasquillo

---

[1] Pagán Santiago was also indicted in this case, but pled guilty and was already sentenced.

Criminal No. 08-438 (JAG)                                              3

Rodríguez. TFO Marrero and Carrasquillo Rodríguez agreed to meet at a kiosk in Luquillo, Puerto Rico later that day. During the meeting, they discussed how the drug and money exchange would take place.

TFO Marrero and Carrasquillo Rodríguez met again at the same kiosk the following day, December 17, 2008. Minutes before Carrasquillo Rodríguez arrived, Jiel Sánchez Santiago (another indicted codefendant in this case who pled guilty and was already sentenced) and Pabellón Rodríguez performed what could be reasonably understood as security sweep or counter surveillance within the kiosk. After this was done, Carrasquillo Rodríguez arrived and requested that TFO Marrero accompany him to another kiosk, which the agent refused to do.

The next day, December 18, 2008, TFO Marrero called González Duarte to discuss the failed drug attempt. González Duarte, who was still in the Dominican Republic told the agent he would come to Puerto Rico to conduct the transaction himself. Later that day, however, TFO Marrero spoke with Pagán Santiago. They agreed that the transaction would take place at the parking lot of a restaurant in Fajardo Mall named Metropol. At approximately 3:00 p.m., Carrasquillo Rodríguez arrived at the parking lot in a blue Toyota, Corolla. Sánchez Santiago and

Criminal No. 08-438 (JAG)                                               4

Pabellón Rodríguez arrived in a black Honda Civic and parked at a certain distance from where Carrasquillo was parked.[2]

TFO Marrero spoke briefly to Carrasquillo Rodríguez. Immediately after the latter showed the former a bag containing what appeared to be a large amount of money, agents quickly moved in and arrested Carrasquillo Rodríguez, Sánchez Santiago and Pabellón Rodríguez. The bag Carrasquillo Rodríguez showed TFO Marrero contained $59,000. Agents also seized a firearm that they found in the front passenger side floor area of the black Honda, where Pabellón Rodríguez was sitting. The firearm has its serial number obliterated.

A jury trial for all defendants was held beginning on February 7, 2011. The jury returned a verdict of guilty on all counts for all defendants on February 11, 2011, the fifth day of trial. (Docket No. 276). Defendants have individually renewed their motions for acquittal under Rule 29 of the Fed.R.Crim.Proc. and move the Court to set the jury verdict aside. The Government timely filed its opposition to each of the motions. Co-defendant Carrasquillo Rodríguez also moved to join, to the extent applicable, the motions filed by the other two co-defendants. (Docket No. 289). The joinder is hereby granted.

---

[2] There was much discussion during the trial concerning the exact distance between the parked cars. The issue will be addressed below.

Criminal No. 08-438 (JAG)                                           5

## STANDARD OF REVIEW

Pursuant to Fed.R.Crim.P. 29, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  When considering a motion under Rule 29, the Court must determine "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." Dirring v. United States, 328 F.2d 512, 515 (1st Cir. 1964); see also United States v. Doe, 921 F.2d 340, 343 (1st Cir. 1990).  In assessing the sufficiency of the evidence, the Court must "'view the evidence and draw reasonable inferences in the light most favorable to the verdict.'"  United States v. Díaz, 300 F.3d 66, 77 (1st Cir. 2002)(quoting United States v. McGauley, 279 F.3d 62, 66 (1st Cir. 2002)). "The evidence is legally sufficient so long as, taken as a whole, it warrants a judgment of conviction."  United States v. Baldyga, 233 F.3d 674, 678 (1st Cir. 2000).  The verdict must stand if a "review of the evidence taken in the light most favorable to the government it is concluded that a rational fact finder could find that the government proved the essential elements of its case beyond a reasonable doubt." United States v. Marín, 523 F.3d 24, 27 (1st Cir. 2008).

Criminal No. 08-438 (JAG)                                             6

**ANALYSIS**

**1. Carrasquillo Rodríguez's Rule 29 Motion**

Carrasquillo Rodríguez asserts that the evidence regarding the conspiracy to possess and the conspiracy to import cocaine (Counts One and Two) was insufficient. The main portion of the motion, however, is focused on his challenges to the convictions involving the firearm. He argues that the evidence demonstrated that he told TFO Marrero that he did not provide Jiel Sánchez Santiago with details of his affairs because he was his driver and, therefore, it follows that he would not know about the weapon in the black Honda driven by Sánchez Santiago. He posits that since there was no knowledge of the weapon there was no evidence he had possessed a gun "during and in relation to" a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Carrasquillo Rodríguez cites extensively from United States v. Rosario-Díaz, 202 F.3d 54 (1st Cir. 2000), a case where the First Circuit determined that in order for a defendant to be convicted for aiding and abetting, it must be demonstrated that he or she had foreknowledge of the crime that was going to be committed.

He further argues that the jury simply speculated as to the knowledge he had of the fact that the weapon has its serial number obliterated. He avers that liability under Pinkerton v. United States, 328 U.S. 640, 66 S. CT. 1108, 90 L.Ed. 1489

Criminal No. 08-438 (JAG)                                             7

(1946), was "stretched beyond its limits." (Docket No. 280, p. 8). The thrust of his argument is that he was never seen inside or even near the black Honda where the gun was found and that the Government has failed to prove he had knowledge of the obliteration of the weapon's serial number.

In its opposition, the Government states that Carrasquillo Rodríguez cannot rely on Rosario Díaz to attack his conviction because in said case the First Circuit only discussed what had to be proven under an aiding and abetting theory of liability, but that in the case at bar, the jury was also instructed on the Pinkerton theory of liability. Under Pinkerton, a conviction is allowed if "a co-conspirator carried or used a firearm in furtherance of the conspiracy and that this was reasonably foreseeable to the defendant." United States v. Bucci, 525 F.3d 116, 132 (1st Cir. 2008).

In a recent case, United States v. Vázquez-Castro, No. 09-2109, 2011 U.S. App. LEXIS 7123 (1st Cir. April 7, 2011), the First Circuit compared and contrasted the aiding and abetting theory of liability and the Pinkerton theory of liability in relation to § 924(c)(1)(A). There, undercover agents approached a vehicle where Vázquez Castro was. After a brief conversation with another occupant, Vázquez Castro exited the vehicle and walked to a second vehicle parked "about six cars away," to retrieve what was later found out to be cocaine. Id. at *4. When

the agents performed the arrests, the driver of the second vehicle revealed that there was a weapon under the carpet on the driver's side. Id. Vázquez Castro argued that there was not enough evidence to convict him for possession of the firearm.

In Vázquez-Castro, the First Circuit noted that in order to convict a defendant under § 924(c)(1)(A) the Government must prove beyond a reasonable doubt that a defendant (1) committed a drug trafficking crime; (2) knowingly possessed a firearm; and (3) possessed the firearm in the furtherance of the drug trafficking crime. Id. Thus, to establish the first element, the Government had to show that Carrasquillo Rodríguez was a member of the conspiracy. "To prove conspiracy, the government must show 'the existence of a conspiracy, the defendant's knowledge of the conspiracy, and the defendant's voluntary participation in the conspiracy.'" United States v. Bristol-Martir, 570 F.3d 29, 39 (1st Cir. 2009) (internal citations and quotation marks omitted). "To establish that the defendants belonged to and participated in the drug conspiracy, the Government must show two kinds of intent: 'intent to agree and intent to commit the substantive offense.'" Id. (quoting United States v. Hernández, 218 F.3d 58, 65 (1st Cir. 2008)).

Regarding the second element, the Government had to establish possession of the firearm. The possession of the firearm may be either physical or constructive. "Constructive

Criminal No. 08-438 (JAG)                                          9

possession of a firearm may be established by showing that the person knows (or has reason to know) that the firearm is within easy reach, so that he can take actual possession of it virtually at will." Vázquez-Castro, 2011 U.S. App. LEXIS 7123 at *13. (quoting United States v. Robinson, 473 F.3d 387, 399 (1st Cir.2007)). Constructive possession is proven by showing that a defendant "knowingly had the power and intention at a given time of exercising dominion and control over a firearm… directly or through others." United States v. Sanchez-Badillo, 540 F.3d 24, 31 (1st Cir. 2008) (quoting United States v. DeCologero, 530 F.3d 36, 67 (1st Cir. 2008)).

Finally, in determining whether there is a nexus between the drug trafficking offense and the weapon, a Court must analyze several factors including whether it was loaded, its proximity to the drugs, whether it was readily accessible and the surrounding circumstances. Id. A Court may take into account that a reasonable trier of fact would be aware that "the illegal drug industry is, to put it mildly, a dangerous, violent business" and "as corollary, the use of firearms is foreseeable in trafficking offenses involving substantial quantities of drugs." United States v. Collazo-Aponte, 216 F.3d 163 (1st Cir. 2000).

In the case at bar, and viewing the evidence in the light most favorable to the jury's verdict, there was sufficient

Criminal No. 08-438 (JAG)                                        10

evidence to establish that Carrasquillo Rodríguez knowingly and
voluntarily participated in the drug conspiracy. Ample evidence
in the form of audio and video recording, as well as testimony
from TFO Marrero, was presented to the jury regarding
Carrasquillo Rodríguez's intent to agree and to commit the
crimes of possessing and importing cocaine since the
conspiracy's genesis during the meeting between agent and
González in the Dominican Republic. Even if it were considered
that he was merely a "gopher," as his counsel candidly portrayed
him, the evidence shows that he played a protagonist's role in
the conspiracy, for he was the one who was to conduct the actual
transaction.

        Furthermore, sufficient evidence was also presented to
allow a rational trier of fact to conclude that Pabellón
Rodríguez and Sánchez Santiago, who were Carrasquillo
Rodríguez's co-conspirators, possessed the firearm that was
found in the black Honda "in furtherance of" the drug
trafficking crime. Vázquez-Castro, 2011 U.S. App. LEXIS 7123 at
*15. At the time of the arrest, the weapon was found on the
floor of the passenger seat area occupied by Pabellón Rodríguez.
It must be noted that the proximity of the weapon to the money
carried by Carrasquillo Rodríguez was not as significant in this
case as the proximity of the weapon and the drugs in cases such
as Vázquez-Castro and United States v. Luciano, 329 F.3d 1 (1st

Criminal No. 08-438 (JAG)                                              11

Cir. 2003). Nonetheless, the two cars where in the same parking
lot and, therefore, it can reasonably be inferred that Sánchez
Santiago's and Pabellón Rodríguez's actions, as well as the
weapon's presence, were all in furtherance of the drug
transaction Carrasquillo Rodríguez was willing and able to carry
out with TFO Marrero.

     Also, the broader context of the seizure of the weapon and
the previous role as counter surveillance agents that Sánchez
and Pabellón Rodríguez had assumed allowed a rational finding
that the weapon was carried in furtherance of the conspiracy.
That is, that the weapon was carried in order to provide
protection to Carrasquillo Rodríguez and the money he possessed.
See Sanchez-Badillo, *supra*.

     Finally, the Court considers that it was foreseeable to
Carrasquillo Rodríguez that his half-brother Pabellón Rodríguez,
who had a criminal record, along with Sánchez Santiago, both of
whom in the past had performed counter surveillance for him,
would be carrying a weapon in furtherance of the conspiracy.
Hence, it was perfectly valid for the jury to find liability for
the substantive weapon charge under Pinkerton given that the
evidence showed that they were all members of the same
conspiracy, the weapon was carried in furtherance of it and it
was foreseeable to him that Sánchez and Pabellón Rodríguez would
be transporting a weapon. Carrasquillo Rodríguez has not argued

at any time that the Pinkerton instruction was improper and, therefore, he may not now challenge his conviction under an aiding and abetting theory when he acquiesced to the jury being instructed on an alternate theory.

The same conclusion is reached regarding the conviction for possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). In order to establish a violation of § 922(k) three elements must be proven: (1) that the defendant knowingly possessed a firearm; (2) that it had its serial number obliterated; and (3) that it traveled in interstate commerce. In this case, the parties stipulated that the weapon had its serial number obliterated and that it traveled in interstate commerce and, therefore, there is no controversy as to these two elements. However, Carrasquillo Rodríguez avers that he did not possess the weapon and that it is not permissible to make such inference under Pinkerton.

Even though there is no precedent in this regard, the Court considers that the verdict is consistent with the Pinkerton theory of liability. Contrary to Carrasquillo Rodríguez's assertion, the Court finds that the jury had sufficient evidence to conclude that it was foreseeable to Carrasquillo Rodríguez that a weapon carried in furtherance of a drug conspiracy by Pabellón Rodríguez, a convicted felon, would be an illegal weapon and that it was also foreseeable that the weapon would

Criminal No. 08-438 (JAG)                                            13

have an obliterated serial number. This does not stretch
Pinkerton beyond its limit. As noted by the First Circuit, "the
use of firearms is foreseeable in trafficking offenses involving
substantial quantities of drugs." United States v. Collazo-
Aponte, 216 F.3d 163 (1st Cir. 2000). The Court is not deciding
here whether the possession of any type of weapon is foreseeable
to co-conspirator under Pinkerton so that, for example, even the
possession of a rocket launcher would be considered within its
scope. However, in this case the evidence was sufficient to
allow the jury to conclude that Carrasquillo Rodríguez could
have easily predicted that a weapon with an obliterated serial
number would be involved, since it is common knowledge that
those involved in illegal activities frequently carry illegal
weapons whose serial number has been altered or erased.

    **2. Pabellón Rodríguez Rule 29 Motion**

In his motion, Pabellón Rodríguez argues that there is no
direct or circumstantial evidence to show that he knew that any
of the other co-defendants were part of an agreement or that his
presence at the kiosks and the shopping mall were in furtherance
of the conspiracy. He also challenges his conviction for
conspiracy to import under Count Two by arguing that the alleged
importation of the fictitious drugs had occurred prior to
December 17, 2008, when he was first seen in the kiosks. He also
challenges his conviction for possession of a firearm in

furtherance of a drug trafficking crime, possession of a firearm with an obliterated serial number and possession as a convicted felon, Counts Three, Four and Five, respectively. He posits that the evidence failed to show that he had knowledge of the fact that the weapon was underneath his seat because it was totally wrapped. He implies that because of his size and stature he could not have seen the weapon. He also argues that the weapon was not properly bagged and tagged, and that, therefore, there is reasonable doubt as to whether it was actually found in the black Honda. The Government timely opposed the motion.

The evidence in the case at bar, taken in the light most favorable to the prosecution, shows that Pabellón Rodríguez participated during two attempts to purchase cocaine from TFO Marrero. First when he performed counter surveillance for Carrasquillo Rodríguez at the kiosks and later when he was arrested at the Fajardo Plaza parking lot. Under the applicable standard this evidence would allow a reasonable fact finder to conclude that he had actively and willfully joined the conspiracy. Contrary to what he asserts, the facts in this case are not similar to the facts in United States v. García-Torres, 280 F.3d 1 (1st Cir. 2002). In García-Torres, the defendant sold guns to members of a drug ring and, for some unknown reason, tagged along with them to commit a murder. The First Circuit found that there was no evidence to demonstrate that the

Criminal No. 08-438 (JAG)                                        15

defendant knew of the drug conspiracy or that he knew that his acts were in furtherance of it. The events that led to the murder in said case involved lengthy disputes between two rival groups and the defendant, "a professional independent gunman and weapon supplier," only came into the picture to perform a peripheral service for the conspiracy: provide the weapons. Id. at 6. Pabellón Rodríguez argues that his role in this case was also peripheral and that he was not part of the drug conspiracy. The Court disagrees.

The evidence was sufficient to show that the role he assumed during the two instances described above, at the kiosks and the parking lot, indicate that he performed ancillary services in furtherance of the drug conspiracy. As the First Circuit recognized in García-Torres, "a drug conspiracy may involve ancillary functions (e.g., accounting, communications, strong arm-enforcement), and one who joined with drug dealers to perform one of those functions could be deemed a drug conspirator." Id. at 4 (citing United States v. Gómez-Pabón, 911 F.2d 847, 853-54 (1st Cir. 1990)). In this case, it was reasonably concluded by the jury, based on the video evidence and the testimony of the agents involved, that Pabellón Rodríguez provided security to Carrasquillo Rodríguez at both the kiosks and Fajardo Mall. This, in turn supports a finding

Criminal No. 08-438 (JAG)                                        16

that he was part of the conspiracy to import and possess with the intent to distribute cocaine.

Pabellón Rodríguez also challenges his convictions for the weapon counts. He argues that there is no evidence to show that he knew that there was a weapon in the vehicle because it was wrapped in a blue towel underneath his seat. He implies that because of his physical dimensions he could not have seen it. He cites United States v, Rodríguez-Lozada, 558 F.3d 29 (1st Cir. 2009) in support of his argument that his proximity to the gun does not link him to it nor the conspiracy. In Rodríguez-Lozada, the owner of the weapons was the tenant of the apartment Rodríguez Lozada was visiting. The First Circuit found that even though there were drugs and weapons in plain view scattered around the apartment, there was not enough evidence to show that Rodríguez aided and abetted the tenant in either the drug conspiracy or the possession of the firearm.

In this case, Agent Jimmy Alverio, who arrested Pabellón Rodríguez at Fajardo Mall, testified under oath that as he approached the passenger side door he saw on the floor of the passenger side a weapon wrapped in a blue rag. He also testified that he found the gun exactly how it appeared on two photographs submitted by the Government: Exhibit 18, which depicts a blue rag, and Exhibit 19, which depicts a partially covered weapon. Even though the pictures depict the rag in different positions,

Criminal No. 08-438 (JAG)                                      17

none of them depict the rag completely hidden underneath the seat. A trier of fact could, taking the photographs and the other evidence in light most favorable to the prosecution, conclude that Pabellón Rodríguez was aware that the weapon was there. This in turn allows a finding of constructive possession and, because he was, as discussed above, a member of the conspiracy, a finding of possession in furtherance of the drug conspiracy.

The same analysis applies to Count Four, possession of a firearm with an obliterated serial number and Count Five, possession of a firearm by a convicted felon. Pabellón Rodríguez stipulated that the weapon had its serial number obliterated and that it traveled in interstate commerce, which covers two elements of 10 U.S.C. § 922(k). The evidence demonstrated that the third element was also present since it was shown that he constructively possessed it. Finally, as to Count Five, it was stipulated by Pabellón Rodríguez that he was a convicted felon.

### 3. González Duarte's Rule 29 Motion

In his motion González-Duarte argues that the Government failed to prove that he conspired with others to knowingly possess and to knowingly import into the United States a detectable amount of narcotics. He also avers that the Court must address the issues of credibility of the Government witnesses and also adopts the arguments posed by Carrasquillo

Rodríguez and Pabellón Rodríguez in their respective motions. The Government filed a timely opposition.

During the trial TFO Marrero testified that he met with González Duarte at a restaurant in the Dominican Republic on December 11, 2008. According to his testimony, González Duarte negotiated with him the purchase and transport of 90 kilos of cocaine and the transport of an additional 60 kilos González Duarte would independently obtain. All of the fictitious cocaine was to be transported from the Dominican Republic to Puerto Rico by TFO Marrero on December 13, 2011. The Government submitted into evidence a video recording of the portion of the meeting that took place in the restaurant's parking lot. TFO Marrero identified González Duarte and himself in the video.[3] He also testified that once they were sitting on the restaurant's terrace González Duarte called Pagán Santiago and that Pagán Santiago put Carrasquillo Rodríguez on the phone.

The Government also submitted into evidence an audio recording of a telephone conversation between TFO Marrero and

---

[3] It is noted that defendants objected to the Court's admission of the video recording. They performed a *voir dire* and asked TFO Marrero if he knew where the original copy of the video was, who took it, which camera was used, etc. The agent denied having knowledge of the details of how the video was taken, except that it was taken by agents from the local police in the Dominican Republic. The Court further inquired whether the video accurately depicted what took place on December 11, 2008 at the Dominican Republic. TFO Marrero testified under oath that it did. The Court thus admitted the video into evidence as Government's Exhibit 1.

González Duarte on December 18, 2008. During the conversation
TFO Marrero complained to González Duarte that he was unable to
perform the drug transaction with Carrasquillo Rodríguez at the
kiosks because Carrasquillo Rodríguez had requested that they
move to another kiosk and because he had expressed he did not
have the money at the time. He also complained that Carrasquillo
Rodríguez had brought two people with him to the kiosks,
purportedly Sánchez Santiago and Pabellón Rodríguez. González
Duarte told TFO Marrero that he could come to Puerto Rico
himself and that he was guaranteeing the transaction. TFO
Marrero explained during the trial that it is common for drug
dealers to put property, people or relatives as guarantee.

Based on these two recordings, as well as TFO Marrero's
testimony, a reasonable trier of fact could conclude that
González Duarte knowingly conspired to import and possess
cocaine. In his motion, González Duarte states that there are
credibility issues regarding the Government witnesses. He failed
to specify what the issues are and to which witnesses he is
referring to. The Court assumes he refers to TFO Marrero's
testimony since he was the only one who testified regarding
González Duarte role in the conspiracy. Also, during his brief
Rule 29 argument at the closing of the case his counsel made
reference to said witness's lack of candor. He urged the Court
to consider that TFO Marrero had not told the jury the entire

Criminal No. 08-438 (JAG)                                                    20

story of how and why he arrived at Dominican Republic. However,
the Court deems that these arguments pertain to the credibility
of the witnesses and, therefore, may not be entertained on a
Rule 29 motion.

### CONCLUISION

For the reasons set forth above, the Motions for Judgment
of Acquittal Pursuant to Rule 29 of the Federal Rules of Civil
Procedure filed by Carrasquillo Rodríguez, Pabellón Rodríguez
and Ramón González Duarte (Docket Nos. 280, 285, 287,
respectively), are hereby **DENIED**.


IT IS SO ORDERED.


In San Juan, Puerto Rico, this 31st May, 2011.


                                        S/Jay A. Garcia-Gregory
                                        JAY A. GARCIA-GREGORY
                                        United States District Judge